**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW HAMPSHIRE**

<u>John Balsamo</u>

    **v.**                                   Case No. 10-cv-500-PB
                                        Opinion No. 2011 DNH 150
<u>University System</u>
<u>of New Hampshire, et al.</u>

**<u>MEMORANDUM AND ORDER</u>**

John Balsamo worked for the University of New Hampshire as a maintenance technician until he lost his job in 2007. He brings the current action against his former employer[1] and four UNH employees. Balsamo asserts state law claims for breach of contract, breach of duty of good faith and fair dealing, wrongful discharge, and intentional interference with a contractual relationship. He also claims that the defendants violated his constitutional rights to due process, free speech, and equal protection. The defendants have filed a motion for judgment on the pleadings.

---

[1] Balsamo has sued both UNH and its parent, the University System of New Hampshire. I treat the two entities as one for purposes of this Memorandum and Order and refer to both as "UNH."

## I.   BACKGROUND[2]

Balsamo began working for UNH as a general maintenance technician in August 2006.  Approximately a year later, on September 21, 2007, Balsamo notified his supervisors at the housing office that he would be out of work for approximately two weeks because of a preexisting knee injury.

On September 25, 2007, Balsamo attended a meeting with defendants Michel Williams, William Meehan, and Vilmarie Sanchez.  During the meeting, Balsamo was confronted with allegations that he had engaged in improper sexual behavior and had made several sexually explicit and racially offensive remarks.  Balsamo admitted that he had made some of the statements but denied the remainder of the allegations.  The defendants informed Balsamo that the allegations against him had been made by co-workers, but they otherwise refused to identify his accusers.  They also declined Balsamo's request to hear from other co-workers "who could confirm that he was neither a sexual deviant nor a racist."

On September 26, 2007, Williams, Meehan, and Sanchez called Balsamo and read him a letter terminating his employment.  The

_____

[2] The background facts are drawn from the Complaint (Doc. No. 2).

2

letter stated that Balsamo had engaged in repeated and unwelcome conduct constituting discriminatory harassment contrary to UNH's standards of performance and conduct.  The letter further advised Balsamo that he could challenge his termination in a "FAIR" grievance process.

Balsamo filed a FAIR grievance on or about October 11, 2007, "alleging he was terminated without due process, without compliance with [the institutional defendants'] own policies, and in a manner that denied him rights that he was entitled to due to his then disability."  The FAIR grievance hearing was held on December 13, 2007.  On January 2, 2008, Balsamo received a letter from defendant Mark Huddleston, informing him that the FAIR review panel had considered UNH's policies regarding termination and discriminatory harassment and would uphold Balsamo's termination.

Balsamo filed a complaint in superior court on September 13, 2010.  The defendants removed the case to this court on November 1, 2010.  In response to the complaint, the defendants filed an answer and a motion for judgment on the pleadings seeking dismissal of all claims.

## II.   **STANDARD OF REVIEW**

"The standard for evaluating a Rule 12(c) motion for judgment on the pleadings is essentially the same as that for deciding a Rule 12(b)(6) motion." Pasdon v. City of Peabody, 417 F.3d 225, 226 (1st Cir. 2005).  The plaintiff must make factual allegations sufficient to "state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).  A claim is facially plausible when it pleads "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.  The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (citations omitted).  In deciding such a motion, the court views the facts contained in the pleadings in the light most favorable to the nonmovant and draws all reasonable inferences in his favor. Zipperer v. Raytheon Co., Inc., 493 F.3d 50, 53 (1st Cir. 2007), cert. denied., 128 S. Ct. 1248 (2008).  "Judgment on the pleadings is proper 'only if the uncontested and properly considered facts conclusively establish the movant's entitlement to a favorable

4

judgment.'"  Id. (quoting Aponte-Torres v. Univ. of P.R., 445
F.3d 50, 54 (1st Cir. 2006)).

**III.   ANALYSIS**

Balsamo asserts a variety of claims under both state law
and the federal constitution.  I address each category of claims
in turn.

**A.   State Law Claims**

Balsamo alleges a breach of contract claim in Count I, a
breach of the implied covenant of good faith and fair dealing in
Count IV, a wrongful discharge claim in Count III, and an
intentional interference with contractual relations claim in
Count V.

**1.   Count I: Breach of Contract**

Defendants challenge the contract claim on several
different grounds.  The individual defendants argue that they
cannot be held liable for breach of contract because Balsamo's
only contract was with UNH.  UNH contends that the contract
claim is defective because Balsamo failed to identify the
specific contract terms that the defendants violated.  It also

argues that the claim is barred by a disclaimer in UNH's online policy manual.

    **a.**  **Individual Defendants**

  Balsamo concedes that he may not maintain a breach of contract claim against any of the individual defendants. Accordingly, the individual defendants are entitled to judgment on the pleadings with respect to Count I.

    **b.**  **UNH**

  Under New Hampshire law, "unless an employment relationship explicitly provides for a definite duration, it is presumed to be at-will." Smith v. F.W. Morse & Co., Inc., 76 F.3d 413, 426 (1st Cir. 1996) (citing Butler v. Walker Power, Inc., 137 N.H. 432, 435–36 (1993)). An employer can discharge an at-will employee at any time and for any reason, "unless a statute, a collective bargaining agreement, or some aspect of public policy proscribes firing the employee on a particular basis." Id.

  In Panto v. Moore Bus. Forms, Inc., the New Hampshire Supreme Court ruled that employee handbooks could alter the at-will status of an employment relationship by creating a contractual obligation on the part of employers to warn or to provide a hearing to employees before discharge. 130 N.H. 730,

737-40 (1988).  The court held that customary principles of contract formation should be followed when analyzing cases involving the creation and construction of such contracts.  Id. at 739; see also Brodeur v. Claremont Sch. Dist., 626 F. Supp. 2d 195, 216 (D.N.H. 2009).  It also noted that an employer could maintain the at-will employee status by "announcing in the written policy itself that it was not an offer, or a policy enforceable as a contractual obligation."  Panto, 130 N.H. at 742 (internal citations omitted); see also Butler, 137 N.H. at 436.

### i.   Failure to Identify Specific Policies

UNH argues that Balsamo's contract claim is defective because it does not identify the specific personnel policies on which the claim is based.

"Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  Iqbal, 129 S. Ct. at 1950 (citation omitted).  In doing so, the court may not disregard properly pleaded factual allegations or "attempt to forecast a plaintiff's likelihood of success on the merits."  Ocasio-Hernandez v. Fortuno-Burset, 640

F.3d 1, 13 (1st Cir. 2011).  An inference that a plaintiff asks
the court to draw from pleaded facts will not fall short under
the plausibility test merely because "other, undisclosed facts
may explain the sequence better." Sepulveda-Villarini v. Dep't
of Educ. of P.R., 628 F.3d 25, 30 (1st Cir. 2010).

Here, although Balsamo has not identified the particular
policies that allegedly form the basis for his breach of
contract claim, his complaint nevertheless meets the
plausibility standards of Twombly and Iqbal.  Balsamo alleges
that UNH has policies that require it to uphold his
constitutional rights, follow certain procedures to resolve
charges of discrimination or harassment, and generally provide
rules and procedures for involuntary termination.  The fact that
Balsamo has not identified these policies by name does not,
standing alone, require dismissal of his breach of contract
claim.  Accepting as true all well-pleaded factual allegations
in the complaint and drawing all reasonable inferences in
Balsamo's favor, these allegations are sufficient to establish
the existence of contractual obligations on the part of UNH.
Whether Balsamo has any evidentiary support for his breach of
contract allegations is a separate issue, one that is better

addressed in a motion for summary judgment rather than a Rule 12(c) motion.

### ii.  Disclaimer

UNH also argues that Balsamo's contract claim is barred by a disclaimer in UNH's online policy manual.  Ordinarily, a court's consideration on a motion for judgment on the pleadings is limited to documents attached to the complaint or expressly incorporated therein, unless the motion is converted into one for summary judgment.  See Watterson v. Page, 987 F.2d 1, 3 (1st Cir. 1993).  Courts have made narrow exceptions, however, for documents central to the plaintiff's claim or for those sufficiently referred to in the complaint.  Id. (and cases cited therein); see also Beddall v. State St. Bank & Trust Co., 137 F.3d 12, 16-17 (1st Cir. 1998).

UNH did not meaningfully address the question of whether I may consider the disclaimer without converting the motion to one for summary judgment.  See Fed. R. Civ. P. 12(c); Rubert-Torres v. Hosp. San Pablo, Inc., 205 F.3d 472, 475 (1st Cir. 2000).  I need not answer this procedural question, however, because the disclaimer is insufficient to defeat Balsamo's contractual claim

even if I assume that I may consider it in ruling on the current
motion.

The disclaimer is included on the home page of a website
titled the "USNH Online Policy Manual," which contains various
policies adopted by the University System Board of Trustees, the
President's Council, the Chancellor's office, and each of the
institutions that make up the University system.  The disclaimer
states:

> Please also note that this compilation of policies is
> presented solely for the convenience of the user and
> is not a contract of employment and cannot be
> construed to establish rights beyond those provided
> for in the official and current policies of USNH and
> its institutions.  The policies published in this
> manual are subject to amendment and repeal at any time
> and without notice.

UNH argues that the disclaimer entitles it to judgment in
its favor on Balsamo's breach of contract claim because it
prevents at-will employees such as Balsamo from basing a breach
of contract claim on any provision in the policy manual.  The
language of the disclaimer is ambiguous, however, because it is
not clear whether the disclaimer refers to the individual
policies themselves, or merely the online compilation of the
policies.  Therefore, I cannot determine, as a matter of law,

that the disclaimer precludes a finding that UNH's policies
created an enforeceable contract with Balsamo.

Accordingly, I deny the defendants' motion for judgment on
the pleadings with respect to the breach of contract claim as it
pertains to UNH.

### 2.   Count IV:  Breach of Covenant of Good Faith And Fair Dealing

Balsamo next alleges that the defendants breached the
implied covenant of good faith and fair dealing in his
employment agreement.  The defendants argue that Balsamo has not
alleged the existence of an employment agreement, and that in
the absence of such an agreement, his claim for breach of the
covenant of good faith and fair dealing must fail.

It is well established that "every contract contains an
implied covenant of good faith performance and fair dealing."
Renovest Co. v. Hodges Dev. Corp., 135 N.H. 72, 81 (1991); see
Richard v. Good Luck Trailer Court, Inc., 157 N.H. 65, 70
(2008).  To properly allege a good faith and fair dealing claim,
a plaintiff must make allegations that are separate and distinct
from those underlying his breach of contract claim.  See Alt.
Sys. Concepts, Inc. v. Synopsys, Inc., No. CIV. 00-546-B, 2001
WL 920029, at *3 (D.N.H. Aug. 2, 2001) (the plaintiff's "good

faith and fair dealing claim is redundant because it will be addressed in its claim for breach of contract"); see also Hall v. EarthLink Network, Inc., 396 F.3d 500, 508 (2d Cir. 2005) ("If the allegations [underlying a good faith and fair dealing claim] do not go beyond the statement of a mere contract breach and, relying on the same alleged acts, simply seek the same damages or other relief already claimed in a companion contract cause of action, they may be disregarded as superfluous as no additional claim is actually stated.") (internal quotation marks and citation omitted).

As discussed above, Balsamo's complaint is sufficient at this stage of the litigation to adequately allege the existence of an employment agreement.  Balsamo has not, however, alleged any facts to suggest that the defendants breached any duty independent of the agreement.  His allegations regarding this claim are no different than those underlying his breach of contract claim.  Consequently, Balsamo's good faith and fair dealing claim is duplicative and will be addressed in his breach of contract claim.

Accordingly, I grant the defendants' motion for judgment on the pleadings on Balsamo's breach of the implied covenant of good faith and fair dealing claim.

### 3. <u>Count III: Wrongful Discharge</u>

Balsamo alleges that the defendants terminated him in bad faith for performing acts that public policy would encourage, which include seeking to use his disability leave rights, exercising his rights to free speech, refusing to admit allegations against him, and seeking a review of the charges against him.  The defendants argue that Balsamo does not allege any facts to support his allegations regarding bad faith and public policy, and that all allegations with regard to those issues are conclusory.  The defendants further contend that to the extent the claim is alleged against the individual defendants, it should be dismissed because the individual defendants cannot be found liable for wrongful discharge, as they were not Balsamo's employer.

### a. <u>Individual Defendants</u>

Balsamo acknowledges that his wrongful discharge claim should have been asserted only against UNH.  Accordingly, the

individual defendants are entitled to judgment on the pleadings
with regard to the wrongful discharge claim.

      **b.**   **UNH**

New Hampshire recognizes a claim for wrongful discharge
when an employee alleges facts showing that "(1) his termination
was motived by bad faith, retaliation or malice; and (2) that he
was terminated for performing an act that public policy would
encourage or for refusing to do something that public policy
would condemn." MacKenzie v. Linehan, 158 N.H. 476, 480 (2009);
see also Short v. Sch. Admin. Unit No. 16, 136 N.H. 76, 84
(1992) (internal citation omitted).  "The public policy
contravened by the wrongful discharge can be based on statutory
or nonstatutory policy." Cilley v. N.H. Ball Bearings, Inc.,
128 N.H. 401, 406 (1986) (citation omitted).

Balsamo's complaint does not include any non-conclusory
allegations that UNH acted with bad faith, malice, or
retaliation.  Nor does he allege any facts to support a claim
that UNH fired him for any "act[s] that public policy would
encourage."  See MacKenzie, 158 N.H. at 480.  Because Balsamo's
conclusory allegations "are not entitled to the assumption of

truth," Iqbal, 129 S. Ct. at 1950, I grant the defendants'
motion with respect to the wrongful discharge claim.

**4.    Count V:   Intentional Interference with Employment
       Contract**

Balsamo alleges that the individual defendants
intentionally interfered with his employment contract with UNH
by causing UNH to terminate him in bad faith without sufficient
grounds.  The defendants argue that Balsamo's claim is defective
because he has not alleged facts to show that the individual
defendants were acting outside the scope of their authority as
agents of UNH.

To prove tortious interference with contractual relations
in New Hampshire, "a plaintiff must show that (1) the plaintiff
had an economic relationship with a third party; (2) the
defendant knew of this relationship; (3) the defendant
intentionally and improperly interfered with this relationship;
and (4) the plaintiff was damaged by such interference." Emery
v. Merrimack Valley Wood Prods., Inc., 701 F.2d 985, 988 (1st
Cir. 1983).  A defendant's employee will not be deemed to be a
third party for purposes of a tortious interference claim if the
employee was acting within the scope of his employment when he
engaged in the conduct that gives rise to the claim.  See Attard

v. Benoit, No. 06-cv-355-PB, 2007 WL 4380065, *6-*7 (D.N.H. Dec.
12, 2007); see also Griffin v. Schneider, No. 93-1253, 1993 WL
220403, at *1  (1st Cir. June 24, 1993) ("[T]he weight of
authority is to the effect that a corporate officer can
'interfere' with a corporation's contracts, in a legally
relevant sense, only by conduct undertaken outside, or beyond
the scope of, his official capacity.") (internal citations
omitted).

Balsamo alleges that the individual defendants interfered
with his contractual relationship "by wrongfully and in bad
faith bringing forth allegations against" him.  Balsamo does not
allege facts to support his conclusion, however, and he has not
alleged that the individual defendants acted outside the scope
of their employment when he was discharged.  See Aversa v.
United States, 99 F.3d 1200, 1210 (1st Cir. 1996) ("An act is
within the scope of employment under New Hampshire law if it was
authorized by the employer or incidental to authorized duties;
if it was done within the time and space limits of the
employment; and if it was actuated at least in part by a purpose
to serve an objective of the employer.").  Because Balsamo's
allegations with regard to tortious interference are conclusory

16

and because he has not sufficiently alleged that the individual defendants acted outside the scope of their authority, they cannot be deemed to be third parties for purposes of Balsamo's tortious interference claim.  Accordingly, I grant the defendants' motion for judgment on the pleadings with regard to this claim.

**B.   Constitutional Claims**

Balsamo alleges in Count II that the defendants violated his constitutional rights to due process, equal protection, and free speech.

**1.   Procedural Due Process**

To establish a procedural due process claim, a plaintiff in Balsamo's position must show that the defendants deprived him of a protected liberty or property interest without constitutionally adequate process.  Aponte-Torres, 445 F.3d at 56; see Perez-Acevedo v. Rivero-Cubano, 520 F.3d 26, 30 (1st Cir. 2008).  Thus, "to determine whether due process requirements apply in the first place, we must look . . . to the *nature* of the interest at stake."  Bd. of Regents of State Colls. v. Roth, 408 U.S. 564, 570-71 (1972) (emphasis in original).  If the plaintiff adequately alleges a protected

17

interest, "the question remains what process is due." Morrissey
v. Brewer, 408 U.S. 471, 481 (1972).

### a.  **Property Interest**

To have a protected property interest in employment, an
employee must show more than a mere unilateral expectation of a
benefit.  See, e.g., Roth, 408 U.S. at 577.  "He must, instead,
have a legitimate claim of entitlement to it."  Id.  Thus, a
plaintiff must allege that there were "rules or mutually
explicit understandings that support his claim of entitlement"
to his position of employment.  Perry v. Sindermann, 408 U.S.
593, 601 (1972); see also Roth, 408 U.S. at 577 ("[P]roperty
interests . . . are not created by the Constitution.  Rather,
they are created and their dimensions are defined by existing
rules or understandings that stem from an independent source
such as state law — rules or understandings that secure certain
benefits and that support claims of entitlement to those
benefits.").

Balsamo alleges that he had a protected property interest
in his continued employment, which was established by the
policies that provided procedures for involuntary termination
and specified the grounds by which the defendants could

18

terminate him for cause.  The defendants maintain that because Balsamo has not identified any specific policy, he cannot claim that such policies create a property interest entitling him to due process of law.

As with Balsamo's claim for breach of contract, his failure to allege the specific name or precise details of the policies upon which he bases his property interest does not require dismissal of his § 1983 claim.  Balsamo has alleged the existence of policies, promulgated by UNH, that may justify his claim of entitlement to continued employment.  His allegations, which I must construe in the light most favorable to him at this stage of the litigation, are sufficient to establish his interest in continued employment with UNH.  See Perry, 408 U.S. at 603 ("[T]he respondent must be given an opportunity to prove the legitimacy of his claim of [entitlement to his position] in light of 'the policies and practices of the institution.'") (internal citation omitted).[3]

---

[3] Because I find that Balsamo has sufficiently alleged a cognizable property interest, I do not address his allegations regarding a protected liberty interest.

### b.  **Constitutionally Adequate Process**

The defendants briefly argue in their motion and reply that the FAIR grievance process was constitutionally adequate, obviating Balsamo's due process claim.  They fail to meaningfully develop those arguments.

The First Circuit has "emphasized that judges are not obligated to do a party's work for him, 'searching *sua sponte* for issues that may be lurking in the penumbra of the motion papers.'" Coons v. Indus. Knife Co., Inc., 620 F.3d 38, 44 (1st Cir. 2010) (quoting United States v. Slade, 980 F.2d 27, 31 (1st Cir. 1992)).  That is particularly true where the argument defies an easy answer.  Id.  Mere "passing allusions" to an argument are insufficient to address meaningfully a disputed issue.  See United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990) ("Judges are not expected to be mindreaders. Consequently, a litigant has an obligation to spell out its arguments squarely and distinctly . . . .") (internal citations and quotation marks omitted), cert. denied, 494 U.S. 1082 (1990).

In light of the brevity with which the defendants addressed the sufficiency of the process afforded to Balsamo, I am "free

to disregard" the argument and I decline to consider it in determining the defendants' motion.  Higgins v. New Balance Athletic Shoe, Inc., 194 F.3d 252, 260 (1st Cir. 1999).  As with the claim for breach of contract, this claim would be better addressed in a motion for summary judgment.

### 2.   **Equal Protection**

Balsamo alleges next that the defendants violated his right to equal protection "by involuntarily terminating [his] employment when other employees of Defendants were not terminated for the same or similar conduct."  The defendants argue that Balsamo has not alleged that he was a member of a protected class entitled to equal protection.

The Fourteenth Amendment's Equal Protection Clause guarantees that "all persons similarly situated should be treated alike."  City of Cleburne v. Cleburne Living Ctr., Inc., 473 U.S. 432, 439 (1985).  Therefore, in order to establish a claim for an equal protection violation, Balsamo would have to allege that the defendants gave differential treatment to persons who were similarly situated to him but who were not members of the same class.  Balsamo has failed to do so.

As the defendants point out, Balsamo does not allege in his complaint that he belongs to a protected class.[4]  Therefore, in essence, Balsamo has brought a "class-of-one" equal protection claim, "alleging that [he] was fired not because [he] was a member of an identified class . . . but simply for 'arbitrary, vindictive, and malicious reasons.'" Engquist v. Oregon Dep't of Agr., 553 U.S. 591, 595 (2008).  As the Supreme Court has made clear, however, "the class-of-one theory of equal protection has no application in the public employment context . . . ." Id. at 607.

Moreover, even had Balsamo alleged that he was a member of a protected class, he bases his equal protection claim on a single conclusory allegation that other employees were not terminated for similar conduct.  He provides no facts about the conduct and treatment of other employees.  Therefore, Balsamo has failed to state a claim for an Equal Protection Clause

---

[4]  Balsamo's opposition suggests that he was disabled because of his knee injury and that he is therefore a member of a protected class based on his disability.  The disabled, however, are not a protected class for equal protection purposes.  See Toledo v. Sanchez, 454 F.3d 24, 33 (1st Cir. 2006) (citing Cleburne, 473 U.S. at 439).

violation, and accordingly, the defendants are entitled to judgment on the pleadings with regard to the portion of Count II that is based on the Fourteenth Amendment's equal protection clause.

### 3.   Free Speech

Balsamo also alleges the defendants violated his free speech rights "in that some of the reasons given for [his] involuntary termination from employment implicated [his] rights to free speech, expression and association . . . ."  The defendants argue that Balsamo has failed to identify any speech or actions entitled to First Amendment protection.

It is well established that "[g]overnment employers . . . need a significant degree of control over their employees' words and actions; without it, there would be little chance for the efficient provision of public services." Garcetti v. Ceballos, 547 U.S. 410, 418 (2006).  Thus, in evaluating the constitutional protections accorded to public employee speech, the court must first examine "whether the employee spoke as a citizen on a matter of public concern."  Id.  If so, then the court must determine "whether the relevant government entity had an adequate justification for treating the employee differently

from any other member of the general public." Curran v.
Cousins, 509 F.3d 36, 45 (1st Cir. 2007) (quoting Garcetti, 547
U.S. at 418).

Balsamo has not identified the speech or conduct he claims
is constitutionally protected.  It appears from his reply,
however, that he must be claiming his sexually explicit remarks
and derogatory slurs qualify as protected speech.  Such a claim
must fail.  Remarks of this sort are simply not matters of
public concern.  Therefore, I need not address the defendants'
justification for terminating Balsamo.  See Garcetti, 547 U.S.
at 418 (stating that if the employee did not speak on a matter
of public concern, "the employee has no First Amendment cause of
action based on his or her employer's reaction to the speech")
(internal citation omitted).

Accordingly, the defendants are entitled to judgment on the
pleadings with regard to the portion of Count II that is based
on the First Amendment.

## IV.   CONCLUSION

For the reasons stated above, I grant the defendants'
motion for judgment on the pleadings (Doc. No. 6) with respect

to Balsamo's claims of wrongful discharge (Count III), breach of

the implied covenant of good faith and fair dealing (Count IV),

intentional interference with employment contract (Count V), and

Count II to the extent that it is based on a claimed equal

protection or free speech violation.  I further grant the

defendants' motion with respect to the breach of contract claim

(Count I) as against defendants Huddleston, Williams, Meehan,

and Sanchez.  I deny the remainder of the defendants' motion.

Balsamo's remaining claims are: (1) breach of contract (Count I)

as against UNH, and (2) a procedural due process claim against

all of the defendants (Count II).

    SO ORDERED.


                    /s/Paul Barbadoro
                    Paul Barbadoro
                    United States District Judge


September 30, 2011

cc:   James F. Lafrance, Esq.
      Jeremy D. Eggelston, Esq.
      Martha Van Oot, Esq.